First, I want to start off with a highlight of some of the important medical evidence in this case. I think it's important to understand that the progression of the medical history in this case to understand why Appellant believes that he should be at least given a second opportunity at a hearing in front of a judge. In the early 1990s, Mr. Lingenfelter suffered a significant knee injury. So are you asking us to reverse and then remand for an assessment of benefits or are you just asking for a remand? A remand for the purposes of allowing a medical expert to review the entire file and render an opinion as to whether or not he satisfies a listing. We submit that at step three of the sequential evaluation, the judge is required to consider whether or not an individual meets or equals a listing. In this case, there was significant evidence submitted, including a report from Dr. Richard Woods in 1997, another report by his treating doctor, Dr. Colouette, in October of 1997, and a report from Stewart Green in 1998, all before the date last insured, suggesting a significant foot impairment. Mr. Lingenfelter wasn't able to get any treatment for that foot impairment because it was a denied injury under his workers' compensation case. It wasn't finally approved until 1999, so when he first saw a doctor for this condition, that doctor indicated that he needed what is called a triple arthrodosis. Specifically in the listings, that is one of the listings that you will look at. It's in the listings under 1.03 currently. And there was sufficient evidence to support the fact that he might meet or equal that listing based upon that evidence, additionally in combination with the knee impairments, which were found to be significant. As far as the knee impairments were concerned, it was found that he had atrophy in the left leg, which is a significant finding of chronic debilitating pain. In conjunction with the foot impairments, which were found, he had severe flat feet, significant deformities of the feet. At the hearing... So when you use findings, are you talking about the findings, specific findings made by the ALJ that are supported by the record? No. Or are you talking about some independent finding that is not of record? I'm talking about the medical evidence supporting a foot impairment from the doctors, not by the ALJ. We submit the ALJ didn't even consider a foot impairment. Well, then the record was closed, and then it went on, right? So what you're asking us to do is to permit a reopening. No. I believe that the evidence was in the file that supported that the judge should consider a foot impairment. He just did not do so. So what I don't understand is why you just don't ask for outright reversal and grant, you know, in favor of you because the record evidence is there, which would mean that it would undermine what the ALJ did and then just remand for an award of benefits. I don't understand why that's not a relief you're seeking. Well, that would be something we would seek, but I don't believe that we can say on the record that that factual determination was made. This really is a question of a factual determination as to whether or not he meets or equals that listing. We submit it's a question of law, whether or not the judge did consider that particular impairment and whether or not it satisfied the listing. So that's why under the listings, we believe it would be appropriate to remand it back for a medical expert based on his testimony, which we don't think that the judge discounted appropriately. He should be awarded benefits based on his own testimony. What I'm getting at is you need to reopen the record, don't you? No, you don't. I believe that the record as you want to resubmit it to an ALJ or just to the board? I wouldn't want an ALJ to conduct a hearing with a medical expert there to testify. That's more evidence, right? That's a reopening. Well, it is a remand for further proceedings. Right. That is what I'm asking for is a remand for further proceedings. Well, let me let me ask you a couple of questions. Certainly. There was a problem here with this credibility. Isn't that correct? There's the credibility issue. The judge discounted him because he made a short attempt due to severe, dire financial need for about two months that he failed to be able to complete. His own testimony was after he went to work for eight hours, he'd have to go down, go home and lay down. And he couldn't, you know, and basically get up the next morning. If you if we were to there was a challenge to the adverse credibility finding. Isn't that right? Right. And if we were to agree with you, then what is that? Then what is the evidence? What's the state of the evidence then? If you agree that it was not properly discounted, I believe that the record supports that he should be found disabled based on the vocational experts testimony in conjunction with the need to lay down as well as the need to change positions significant over a short period. And I also understand you had another argument, which was that you you were challenging the ALJ's failure to adequately consider the treating physicians. Is that right? Or do you or is it your position that he did consider the the treating physicians reports? And I don't think that he really did appropriately consider the treating physicians reports and assessments. That was not an issue that was raised below. So I'm not challenging it in that sense that he didn't properly consider the treating physician. I'm challenging it in the sense that the RFC that was provided by the judge was inappropriate because he didn't consider what the treating doctor had to say. Specifically, the treating doctor indicated in 1997, because of severe pain in his knees and his feet, he required a wheelchair, which wasn't approved because the insurance, the workers' comp insurance carrier, wouldn't approve a wheelchair. And so the treating physician's opinions were not properly considered. There's statements also by other doctors saying that he's completely disabled until he can have the surgery. At the hearing, he had his foot in a cast and was awaiting further surgery, which shows that he you know, he when the treatment was available to him, he utilized the ability to get that treatment. But it just wasn't available to him. OK, so your last let me just make sure I understand what in light of the credibility issue, you just said that we would agree with you. They would be eligible for benefits or qualify for benefits or be disabled. What is it that you want us to do? Well, this is your, you know, make your best pitch. What do you want the panel? My best pitch is I think that he should be found credible and then based upon the vocational experts testimony, which was based on his. Who makes findings in these cases? We don't. Right. The judge makes findings. Correct. Got to go back to the ALJ and you want to reopen. Well, my best pitch, I was asked to make my best pitch, which is I believe that his testimony should be fully credited. And if his testimony is fully credited, he should be found disabled. The vocational expert indicated that an individual who has to lie down several times during the day because of pain or had to change positions so frequently wouldn't be capable of doing any type of sedentary work. So that would ideally that's what I what we would ask for. If that doesn't pan out for you. Then I would like a remand for the purposes of having a medical expert review the evidence and determine whether or not the foot impairment was significant because the judge only said he has a post-polio syndrome. He doesn't indicate what that means. Significantly, that was he had a knee injury. As that problem continued to progress, he developed problems with his feet. He had severe problems with his feet. I gather a lot of this stems from the fact that he had children. Likely. And that's not clear. That's not exactly clear because what happened was the workers' comp case, they originally denied the foot injuries. Because they said the foot injuries couldn't be a result of the knee problems. But then his treating doctor provided an opinion stating the foot injuries were as a result of the knee problems because he had weakness in his feet due to the post-polio syndrome. So that's why the foot problems developed. So I mean that's what we're asking for. I think there's some significant errors that were made in the case, specifically regarding his credibility. You have to look at the fact that he had atrophy in his left leg. And atrophy, if you look at the listings, if you look at 1.04A, when they talk about back problems, they talk about atrophy. Because atrophy is a well-known symptom of chronic debilitating pain. Somebody's muscle basically wastes away. You only have that when you're in chronic pain. And so because of the pain that he was in, you know, we submit that he should be found fully credible if fully debilitated. Then it should be remanded with award of benefits. Since 2002, he's been on Title XVI benefits, correct? Correct. So what you're asking for is from the onset, as established in front of the ALJ, to the time he got Title XVI benefits? That is correct. And he was found disabled under Title XVI purposes because of a significant age change. That doesn't necessarily mean that the prior decision was correct. You're not going to get disability benefits, per se, post? Right. He may not get any further monetary benefit. But one of the major things that he's going to get, he's going to get Medicare instead of Medi-Cal. Which, I don't want to go into details of all that, but it is a significant difference. And we've had clients who, maybe had they been on Title II, would still be here because they would have gotten appropriate treatment. Whereas, when they were on Title XVI, they're subject to Medi-Cal. So it is significant for him. It may not provide any monetary benefit, but it is a significant benefit to him. He'll get benefit for the onset period. Correct. And there may not be an application that allows him to get very much, as far as a monetary benefit. But that's really not the significance of this for him. All right. Thank you, counsel. Good morning. My name is John Cusker, and I represent Joanne Barnhart-Appley, and Commissioner of Social Security. It's our position that the only issue that's properly before this Court is whether the administrative law judge properly evaluated the credibility of the claimant's allocations. Now, in this particular case, the ALJ found that the claimant's allegations were partially credible. What he did not find credible was the claimant's allegation that he was unable to perform a sedentary job. And in this regard, the ALJ's consideration of the claimant's former work is particularly significant, because, among other things, it indicated that the claimant was not totally unable to ambulate effectively. His former job involved quite a bit of standing and walking. He was a bus cleaner for a week, and then he apparently worked about seven weeks in a warehouseman's job. What is one to do? Excuse me? What is one to do when you have no income, and you need to eat, you need to live? That's a very good question. What is one to do? I wonder what he did for the six years in between. I don't know. I don't know either. What you do is you point to that, and you say, ah, you know. He testified, what he said was he went out to work because he needed to. He needed some money. He was clearly performing jobs that were in excess of the physical requirements that his doctors recommended. He testified that he came home every day and had to basically go to bed. That is what he said. But significantly, he didn't say that he was terminated from his last job because he was physically unable to do it. He said that he was unable to meet the performance standards of that job. It's also worth noting that immediately after the period that he stopped working, his worker's compensation award came through. Could you address the omission of a finding by the ALJ with respect to the foot problem? Well, I believe the ALJ does address the foot problem by referring to the post-polio syndrome. This was a matter that was diagnosed by a doctor who was specifically looking at that issue. Can you give me a quick record, Steve? To what the ALJ said. A finding. Well, he talks about, this is on transcript page 25. He talks about Dr. Callowet finding a marked flat foot deformity. He then immediately below that. Where are you reading from? Transcript page 25. Which paragraph? Third paragraph from the top. Notes Dr. Callowet comment, he presents with sudden onset of right foot pain. He has marked flat foot deformity. So he's restating what Dr. Callowet. That's what he's saying. In Dr. Callowet's report. And then the next paragraph, he finds that the claimant has post-polio syndrome, which I believe was a diagnosis by Dr. Woods. Any finding of effect? Or Dr. Green. Any finding of effect? Yes. Or did he just tip over? That's what counsel argued. He just, he diagnosed, he mentioned the diagnosis, but then didn't take it into account in determining disability. Well, I believe that he did. The doctors who weighed in with opinions on how much physical activity the claimant could perform all said that the claimant could perform sedentary or semi-sedentary work. I believe Drs. Callowet and Tischler did not weigh in with opinions on this issue. So, Yale, please. Well, they were the actual treating physicians, whereas all the other people were either employed by you or the workers' comp people, and they were reviewing records and didn't have firsthand experience with this, with the, what's his name, Mr. Ling letter. And so, you know, you have to wonder whether the ALJ appropriately gave the proper weight to the actual treating physicians, especially Dr. Callowet, who had been treating Mr. Ling letter for a long period of time. Well, I'm not sure that all of the other doctors weren't, in fact, in the position of being treating doctors. Some of them were consultants to treating doctors, and I believe Dr. Green, the one who diagnosed post-polio syndrome, was one of those. And I believe Dr. Oviedo may have been a treating doctor. But the only thing that contradicts those treating, the opinions that the claimant could perform some degree of sedentary work would be the statements by Drs. Callowet and Tischler that the claimant is, quote, disabled. In Dr. Tischler's case, I think it's clear that what he is stating is a fact, that the claimant had recently been found disabled under workers' comp statements. And in Dr. Callowet's case, again, it's a bold statement, and I believe it refers more to the claimant's workers' compensation status than any relevant consideration to Social Security's definition of disability. The evidence strongly suggested, in support of the ALJ's decision, that the claimant could perform some range of sedentary work. He allowed the claimant some benefit of the doubt with respect to his subjective symptoms, and the vocational expert testified that even with those restrictions in mind, the getting up and standing every hour or every half hour and the elevation of his leg, that the claimant could still perform significant numbers of jobs. Maybe I'm missing something in that presentation you just gave, but I'm still waiting for you to answer Judge Beezer's question. Excuse me. I've got off on a tangent. Judge, could you restate your question? No. I was just asking for a record site on the foot problem that it was not an impairment to his working. Well, I don't believe the judge thought that the foot problem wasn't an impairment. Well, I don't care what you thought. I want to know what the findings are of the record. Let me go back. That's what we're dealing with. We can't just make up our minds we'd like to take care of somebody. We have to have a reason to either reverse or affirm the case, and that's the record you made before the ALJ. Right? That's when the doctors testified. We're not listening to lawyers testify. We're just trying to get you to organize the record and put it in a shape that we can understand and apply. The ALJ's decision, as I've noted, refers to the flat foot condition. The flat foot condition was also considered by the state agency's doctors. I believe it was apparent at other points in the record. The ALJ is clearly aware of it. And then I said, did he make a finding about it, one way or the other? Well, the ALJ made a residual functional capacity finding. It takes into account post-polio syndrome, which primarily affects... Is that what he says in the record, taking into account the post-polio syndrome and other disabilities I find he's unqualified or qualified to work? I believe you have to read the record that way. Okay. There may be an arguable deficiency of decision writing clarity, but the record is complete in as far as the ALJ's findings are concerned. Please excuse me for not satisfactorily answering your question the first time around, Judge. It's not my case. I'm trying to look at it as objectively as I can. I'd like to give both sides an opportunity during oral argument to point to the record that supports their case. And that's why we're here. Two other points I'd like to make briefly. The first regarding the listings themselves. It's clear that the claimant did have the ability to ambulate effectively during the period that's relevant to the ALJ's decision. Whatever happened to him afterwards, whether it was the triple arthrodesis or any period in which he was not able to ambulate effectively would not warrant a remand. The other point that I'd like to make is that if the Court does consider whether the Court is obviously considering whether it should remand or reverse the ALJ's decision. In the event that the Court does so act, I would point out that the ALJ clearly states that the claimant's condition was deteriorated. And that upon remand, some onset date for any disabling impairment that would be found would have to be established. Well, wasn't an onset date established initially? There was an onset date. By when the petition was filed? The onset date in Title II cases can precede the date of the filing of the petition. The date of the application? The date of the application. Excuse me. By how far? Is it a year? I can't remember. I believe it's two. Two years. So the onset date can be within the two-year period of the date of application. Well, the onset date can actually be almost any time. But in terms of payment and establishing benefits, I believe it's two years. Two years. I see. So you can have an onset date, file, wait a couple of years, file an application, but benefits would only go back two years. So, for example, in this case, the onset date was 1993. The application, I believe, was 1998. So benefits couldn't be paid back to 1993, but some subsequent date to that. But even in 1998, his condition hadn't really become final for purposes of the ALJ's decision-making. Right. And if disability would be established, some medical evidence for establishing an onset date would be necessary. You're over your time, but I just have one question that troubled me. Because the ALJ says the undersigned concludes there are jobs existing in significant numbers in the national economy, which the claimant is able to perform for all the foregoing reasons. He concludes that the claimant retains the capacity to adjust to work which exists in significant numbers in the national economy. Isn't that clearly undermined by the vocational expert's testimony when he's asked to consider the hypothetical where the claimant must raise both feet? Well, the ALJ was not required to believe that testimony. The answer to your question is that if the ALJ had believed that testimony, then, and had made a finding that the claimant had to elevate both feet, yes, is the answer to your question. But the ALJ didn't believe that. Didn't believe that he'd have to periodically raise both feet. He discredited it. He accepted certain parts and discredited other parts. That's correct. Okay. All right. You're over your time. Thank you very much, counsel. And Lingenfelter v. Barnhart will be submitted. We'll take Royal Plywood. He didn't have any rebuttal. Did you want to ask him a question? He went over his time, too. Okay. No, that's fine. We'll take Royal Plywood v. Amoroso.
judges: Beezer, Wardlaw, Paez